## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GREGORY GILREATH,                                  Case No. 1:09-cv-628
     Plaintiff,

                              Beckwith, J.
     vs                                        Hogan, M.J.

PLUMBERS, PIPEFITTERS, &
SERVICE TECHNICIANS LOCAL
502, et al.,                                       **REPORT AND RECOMMENDATION**
     Defendants.


     Plaintiff Gregory Gilreath brings this pro se action against defendants Bechtel

Construction Company (BCC), Plumber, Pipefitters & Services Technicians Local 502 (the

Union), Wilson McShane Corporation (WMC), and the National Labor Relations Board

(NLRB) alleging state and federal law claims based on incidents arising from plaintiff's former

employment with Bechtel Construction Company and his membership in the Union. This

matter is before the Court on plaintiff's motion for leave to amend pleadings, supplement the

pleadings, and add a party to the pleadings (Doc. 27), defendant Bechtel Construction

Company's memorandum in opposition (Doc. 32), and plaintiff's reply memorandum (Doc.

52); and on defendant Bechtel Construction Company's motion for judgment on the pleadings

and for partial summary judgment (Doc. 30), plaintiff's memorandum in opposition (Doc. 43),

and defendant BCC's reply memorandum. (Doc. 48).

## I. Original Complaint

     Plaintiff's complaint[1] alleges the following: Plaintiff, Gregory Gilreath, is a former

---

[1]The allegations of the complaint are taken verbatim from the Report and Recommendation of February 1, 2010. (Doc. 41).

employee of BCC and a member of the Union. According to the complaint, Gilreath learned

about misdeeds engaged in by employees of BCC and the Union. (Doc. 2 at ¶¶ 7, 8, 50). As a

result, he filed charges against BCC and the Union with the National Labor Relations Board

(NLRB), on January 3, 2009. (*Id.* at ¶ 10). Ultimately, these charges were resolved by means

of a settlement brokered by a representative of the NLRB. (*Id.* at ¶ 11-15). Following the

settlement, however, Gilreath claims that BCC and the Union resumed their allegedly unlawful

practices. (*Id.* at ¶ 17). In addition, in April, 2009, Gilreath was asked to pay more than

$700.00 in dues to the Union as a result of his settlement with BCC. (*Id.* at ¶ 18). Gilreath

disputed this amount, accused BCC of violating the confidentiality provision of the settlement

agreement, and alleged that the Union violated its fiduciary duties to him.

     In the summer of 2009, Gilreath's relationship with the Union worsened. After

suffering a physical injury, he contacted and visited Defendant, Wilson McShane Corporation

(WMC), the third party administrator for the Union's health insurance and pension funds, to

discuss his disability benefits. (*Id.* at ¶¶ 3, 20, 23, 24). Following this visit, Gilreath went next

door to the Union office and allegedly became involved in a violent confrontation with some of

the Union members. (*Id.* at ¶ 25-28). Due to this incident, Gilreath alleges that he was not

permitted to pay his Union dues, was barred from returning to the Union hall, and that formal

charges were brought against him for alleged violations of the Union's policies. He, therefore,

filed another set of charges against the Union with the NLRB, alleging that he was unfairly

prevented from obtaining evidence to prepare his defense against the internal charges initiated

by the Union. (*Id.* at ¶¶ 33, 46-47, 49, 50, 53-54).

     As a result of these events, Gilreath filed this civil action seeking monetary damages

and injunctive relief.  He has asserted causes of action against the Union and BCC for breach of

contract, a violation of 29 U.S.C. § 185, assault, defamation, and discrimination.  In addition,

Gilreath asserts a claim for an alleged violation of the confidentiality agreement against BCC.

(*Id.* at ¶ 86-88).  Finally, Gilreath has asserted a claim for alleged breach of fiduciary duties

against the Union, BCC, and the NLRB. (*Id.* at ¶ 103-106).

  Appended to the complaint is a copy of the March 2009 Settlement Agreement between

BCC and plaintiff referenced in plaintiff's complaint. (Doc. 3, Exh. 1).  The Settlement

Agreement provides in relevant part:

> The amount provided in paragraph 1 is the full and complete amount to be paid
> to Gilreath and he shall be entitled to no other payments of any kind (either paid
> to him or on his behalf) as a result of any claims he has, had or may have,
> whether against BCC . . .  or any affiliated entity.  The parties acknowledge that
> this Agreement is in complete settlement of any and all disputes and claims
> between and among the parties. . . .

*Id.* at ¶3.  The Agreement further provides that the "parties agree to keep the amount of this

settlement confidential, with it to be disclosed by Gilreath only for the purpose of advising his

immediate family and/or tax advisors, by BCC . . . only for legitimate business purposes, and

by any party as may be required by law or as provided for in paragraph 2." *Id.* at ¶5.

**II.  Proposed Amended Complaint**

  Plaintiff seeks to amend and supplement his original complaint to add two additional

causes of action against defendant BCC: civil conspiracy and breach of fair representation.

(Doc. 27, proposed amended complaint, ¶¶180-186; 222-226).  The proposed amended

complaint recounts many of the same allegations contained in the original complaint.  As it

relates to defendant BCC only, the proposed amended complaint alleges the following facts:

3

–BCC terminated plaintiff from his employment with BCC on August 28, 2008. (Doc. 27, proposed amended complaint at ¶9).

–Plaintiff filed unfair labor practice charges against the Union and BCC on January 3, 2009. (Doc. 27, proposed amended complaint at ¶18).

–The NLRB investigated the charges. (Doc. 27, proposed amended complaint at ¶22).

–Plaintiff and BCC executed a settlement agreement resolving the charges. (Doc. 27, proposed amended complaint at ¶¶22-25).

–The settlement agreement contained a confidentiality clause which was breached by BCC. (Doc. 27, proposed amended complaint at ¶26-29).

–BCC was "associated with" conduct by Local 502 which included withholding plaintiff's Union membership card, denying plaintiff the opportunity for work, losing plaintiff's welding continuity forms, filing malicious internal Union charges against plaintiff, unlawfully expelling plaintiff from the Union, soliciting false and other salacious statements from Local 502 personnel and associates, violations of plaintiff's due process rights, and engaging in other conspiracies with the UA [United Association]. (Doc. 27, proposed amended complaint at ¶¶40-41).

Additional facts alleged in the proposed amended complaint which relate to actions and

conduct involving defendants other than BCC which occurred subsequent to the filing of the

original complaint will not be recounted here.

### III. Defendant BCC's motion for judgment on the pleadings should be granted.

In determining a motion for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be

taken as true." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

"The motion is granted when no material issue of fact exists and the party making the motion is

entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Commn.*, 946

F.2d 1233, 1235 (6th Cir. 1991). *See also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d

577, 582 (6th Cir. 2007). Where a Rule 12(b)(6) defense of failure to state a claim upon which

4

relief may be granted is raised by a Rule 12(c) motion for judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion. *Fritz*, 592 F.3d at 722; *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir. 1987).

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pleadings by a pro se litigant must be liberally construed and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To avoid dismissal for failure to state a claim for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. While the plaintiff need not plead specific

5

facts, his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Defendant BCC seeks judgment on the pleadings asserting that the March 2009 Settlement Agreement between it and plaintiff bars plaintiff's causes of action in his original complaint for breach of contract, a violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, assault, defamation, discrimination, and breach of fiduciary duties (Counts I, II, IV, V, VI, and VII). BCC also contends that even apart from the Settlement Agreement, these causes of action should be dismissed on the basis of untimeliness, federal preemption, and failure to state a claim for relief, among others.

In response, plaintiff contends he has not been permitted discovery to which he is entitled under Fed. R. Civ. P. 56 and that defendant BCC is attempting to influence the Court through its pleadings. Plaintiff also asserts that prior to signing the Settlement Agreement, he wrote a letter to the NLRB expressing his refusal to waive his right to punitive damages and his wish to be reinstated to his previous position. (Doc. 43, Exh.1). Plaintiff alleges the "forced settlement is unjust, perpetrates fraud, contrived during time of duress, and is overreaching" and "necessitates that the agreement be invalidated." (Doc. 43 at 4).

As an initial matter, plaintiff fails to establish he is entitled to discovery prior to the Court's resolution of the instant motion. First, the resolution of whether the Settlement Agreement released BCC from the claims asserted by plaintiff against it is a question of law for the Court. Second, plaintiff fails to advise the Court exactly what information he needs through discovery to oppose the motion for judgment on the pleadings and for partial summary judgment. A Rule 56(f), Fed. R. Civ. P., affidavit is the proper method of requesting additional

time to respond to a motion for summary judgment. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). A party seeking an extension of time must show the need for discovery, the material facts to be discovered, and the reasons for not previously discovering the information. *Id.* Plaintiff has not submitted a Rule 56(f) affidavit. Nor has he informed the Court what material facts he hoped to obtain through further discovery and how such discovery would alter the outcome of this action. His general and conclusory statements regarding the need for discovery are insufficient to justify his request for discovery. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

**A. The Settlement Agreement bars plaintiff's claims for breach of contract, a violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, assault, defamation, discrimination, and breach of fiduciary duties (Counts I, II, IV, V, VI, and VII).**

Under Ohio law, a contractual release is ordinarily an absolute bar to a later cause of action encompassed within the release. *Haller v. Borror* Corp., 50 Ohio St.3d 10, 13, 552 N.E.2d 207, 210 (1990). A contractual release is subject to the usual rules governing the construction of contracts. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp.2d 722, 780 (S.D. Ohio 2009). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* (quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, syllabus para. 1, 509 N.E.2d 411 (1987)).[2] As explained by one court:

Whether a release operates upon a certain liability depends entirely upon the

---

[2]In determining whether the contracting parties intended to relinquish all claims for injuries, the Court considers: (1) the presence or absence of bargaining and negotiating leading to settlement; (2) was the releasee clearly liable: (3) was there discussion concerning the alleged injuries; (4) is the claim that the injuries were in fact unknown at the time of the execution of the release reasonable; (5) was the amount of consideration received reasonable compared with the risk of the existence of unknown injuries; (6) the presence or absence of haste by the releasee in securing the release; and (7) did the release specifically include or exclude the injuries alleged. *Scotts*, 606 F. Supp.2d at 780 (citing *Sloan v. Standard Oil*, 177 Ohio St. 149, 153, 203 N.E.2d 237, 240 (1964)).

> intention of the parties, which is to be gathered from the language of the release and the state of facts then existing. If the parties to a release intend to leave some things out of a release, then "their intent to do so should be made manifest." When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the language employed by the parties. Moreover, when the parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement.

*Sequa Corp. v. Elyria Foundry Co.*, No. 1:03-cv-2508, 2006 WL 2849736, at *6 (N.D. Ohio

Sept. 29, 2006) (quoting *Task v. National City Bank*, No. 65617, 1994 WL 43883, at *4 (Ohio

App. 8th Dist. Feb. 10, 1994)).

The language of the Settlement Agreement between BCC and plaintiff is clear and

unambiguous, and its interpretation is a matter of law. *Scotts Co. LLC*, 606 F. Supp.2d at 734

(citing *Latina v. Woodpath Development Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991);

*Lewis v. Mathes*, 161 Ohio App.3d 1, 8, 829 N.E.2d 318, 323 (Ohio App. 4th Dist. 2005)

(where release is clear and unambiguous, its interpretation is a matter of law)). The language

of the Settlement Agreement unambiguously provides that it "is in complete settlement of *any*

*and all disputes and claims* between and among the parties" including "any claims he

[plaintiff] *has, had or may have*, whether against BCC . . . or any affiliated entity." (Doc. 3,

Exh. 1 at ¶3) (emphasis added). The language of the release does not include any provisions

evincing an intent to exclude any future claims or causes of action plaintiff may have for

punitive damages or other relief. Rather, the Agreement's language expresses the parties'

intent to release any and all claims plaintiff had or may have against BCC. As such, the

Settlement Agreement bars plaintiff's claims against BCC for breach of contract, a violation of

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, assault, defamation,

8

discrimination, and breach of fiduciary duties (Counts I, II, IV, V, VI, and VII).

The Court recognizes that a release may be invalidated if it was procured by fraud or was the result of mutual mistake. *Scotts Co. LLC,* 606 F. Supp.2d at 734 (citing *Pizzino v. Lightning Rod Mutual Insurance Co.*, 93 Ohio App.3d 246, 252, 638 N.E.2d 146, 150 (Ohio App. 8th Dist. 1994)). While plaintiff now alleges for the first time in his memorandum in opposition to defendant's motion that the settlement is unjust and fraudulent, he has failed to allege a fraud claim under Fed. R. Civ. P. 9(b), which requires such claims be pled with particularity. Plaintiff must "allege the time, place, and content of the alleged misrepresentation on which plaintiff relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." *Scotts Co. LLC,* 606 F. Supp.2d at 735 (citing *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993)). Plaintiff has failed to allege any such facts in his complaint or memorandum in opposition to defendant's motion. Moreover, plaintiff's letter to the NLRB expressing his wishes for punitive damages predates the March 2009 Settlement Agreement and plaintiff fails to allege any facts or pertinent legal authority showing how this letter somehow invalidates the agreement he subsequently signed and authorized.

In his memorandum in support of his motion to amend the complaint, plaintiff now suggests that the Settlement Agreement should be set aside on the basis of mutual mistake. (Doc. 52 at 7-8). Plaintiff asserts he "was under the belief that the settlement was simply for compensatory damages." *Id.* at 8. He states this is what he relayed to the NLRB who was negotiating on his behalf. Yet, what plaintiff is actually asserting is not a "mutual" mistake, but rather a unilateral mistake on his part. "A 'material mutual mistake' is a mistake made by

9

both parties at the time a contract is made, as to a basic assumption on which the contract is made, which has a material effect on the agreed exchange of performances." *Sequa Corp. v. Elyria Foundry Co.*, No. 1:03-cv-2508, 2006 WL 2849736, at *6 (N.D. Ohio Sept. 29, 2006) (citing *Reilly v. Richards*, 69 Ohio St.3d 352, 353, 632 N.E.2d 507, 509 (1994)). Where, as here, the language of the Settlement Agreement is clear and unambiguous that the release applied to "any and all disputes and claims" that plaintiff "has, had or may have. . ." (Doc. 3, Exh. 1 at ¶3), plaintiff cannot claim a material mutual mistake of fact that the parties only intended to release claims for "compensatory" damages. "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. . . . If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." *Haller*, 50 Ohio St.3d at 14, 552 N.E.2d at 210 (citations omitted). Plaintiff also suggests he was taken advantage of by the "conglomeration of labor attorneys" at the NLRB who negotiated in "bad faith" given "their proven coziness to the employer. . . ." (Doc. 52 at 8). Plaintiff's conclusory allegations are unsupported by any assertions of fact and do not compel avoidance of the Settlement Agreement in this matter.

Finally, plaintiff does not allege that any of the causes of action against BCC alleged in Counts I, II, IV, V, VI, and VII arose after the March 2009 Settlement Agreement date. Therefore, the claims asserted in Counts I, II, IV, V, VI, and VII are encompassed under and barred by the Settlement Agreement and should be dismissed as to defendant BCC.[3]

---

[3]Because the Court recommends that Counts I, II, IV, V, VI, and VII be dismissed on the ground that they are barred by the March 2009 Settlement Agreement, the Court declines to address defendant BCC's alternative grounds for dismissal of these claims.

**IV. Defendant BCC's motion for partial summary judgment should be granted.**

A motion for summary judgment should be granted if the evidence submitted to the

Court demonstrates that there is no genuine issue as to any material fact, and that the movant is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under

Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The

Court must evaluate the evidence, and all inferences drawn therefrom, in the light most

favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Industrial

Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC,

LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

Count III of the complaint asserts that BCC breached the confidentiality clause of the

March 2009 Settlement Agreement. (Doc. 3, ¶¶86-88). That provision provides:

> The parties agree to keep the amount of this settlement confidential, with it to be
> disclosed by Gilreath only for the purpose of advising his immediate family
> and/or tax advisors, by BCC [and an affiliate] only for legitimate business
> purposes, and by any party as may be required by law or as provided for in
> paragraph 2.

(Doc. 3, Exh. 1 at ¶5). Plaintiff alleges BCC violated the terms of the confidentiality clause

when it provided Local 502 a Union Summary Report. (Doc. 3, ¶56 and Exh. 9). The Union

Summary Report referenced the amount that was paid to plaintiff under the terms of the March

2009 Settlement Agreement. *Id.*

BCC contends it is entitled to partial summary judgment on plaintiff's breach of confidentiality claim because any disclosure was made to the Benefit Funds (and not Local 502) and was permitted by the express terms of the confidentiality provision.  Defendant BCC submits the Affidavit of John Gaal, the attorney who represented BCC in the unfair labor practice proceedings brought by plaintiff against BCC before the NLRB.[4]  Gaal avers that the Union Summary Report was transmitted by BCC to the Benefit Funds, and not to Local 502. The Settlement Agreement obligated BCC to make fringe benefit contributions on plaintiff's behalf to the Benefits Fund.[5]  BCC provided the Benefit Funds with the customary explanatory reports which accompany wage payments so plaintiff could be properly credited with the contribution amounts.  Gaal states that the settlement amount was not disclosed as a "settlement amount" on the Union Summary Report, but as wages paid to plaintiff to effectuate the benefit contribution required under the Agreement.  Because fringe benefit contributions are generally based on hours worked, the settlement amount was equated to a matching number of hours worked based on plaintiff's hourly rate and the corresponding benefit contribution amounts were calculated. (Doc. 31, Gaal Aff., ¶¶3-8).  The Union Summary Report is a report that is transmitted to the  Benefit Funds in the normal course of business. (Doc. 31, Gaal Aff., ¶10; Jordan Decl. ¶3).  Carol Jordan, a Craft Payroll Lead with BCC, declares that plaintiff's Union Summary Report was sent by her office directly to the Benefit Funds and not to the Union itself. (Doc. 31, Jordan Decl. ¶4).  The settlement was implemented by sending a check

---

[4]The charges stem from the termination of plaintiff's employment with BCC which were the subject of the March 2009 Settlement Agreement. (Doc. 31, Gaal Aff. ¶¶1-2, Exh. A)

[5]The Settlement Agreement provides, "BCC shall contribute on Gilreath's behalf to the applicable fringe benefit funds the appropriate amounts based on the above payment to Gilreath." (Doc. 1, Exh. 1, ¶1).

made payable to plaintiff in the settlement amount in care of the NLRB Field Examiner on plaintiff's case and the required Benefit Funds contributions were sent directly by BCC to the Benefit Funds. (Doc. 31, Gaal Aff., ¶8, Exh. E).

Thereafter, as a result of plaintiff's assertion he had not received the proper credit for benefit contributions, the NLRB requested evidence from BCC that BCC had in fact made the required contributions to the Benefit Fund. (Doc. 31, Gaal Aff., ¶¶11-17, Exhs. H, I). Apparently a hold had been put on BCC's benefit contributions check by the Benefit Funds which needed BCC to confirm with the Union that neither union dues nor vacation benefits had been withheld from any payment to plaintiff. (Doc. 31, Gaal Aff., ¶12). Gaal then sent a facsimile to Union Business Manager Roger Baum on March 31, 2009, confirming that the Settlement Agreement did not allow BCC to withhold union dues or vacation benefits. (Doc. 31, Gaal Aff., ¶11, Exh. G). The facsimile from Gaal did not disclose the amount of the settlement. *Id.* Gaal, through email correspondence to the NLRB Field Examiner, detailed BCC's compliance with the terms of the Settlement Agreement and attached letters BCC secured from the Benefit Funds confirming the amounts credited and applied to plaintiff's benefit accounts. (Doc. 31, Gaal Aff., ¶16, Exhs. J, K, L). Mr. Gaal avers that the foregoing actions were taken in the normal and required course of business so that plaintiff could receive the Benefit Funds contribution credit under the Settlement Agreement. (Doc. 31, Gaal Aff., ¶18). Gaal also avers that aside from sending copies of the fully executed Settlement Agreement to the NLRB Field Examiner and plaintiff on March 16, 2009, he has not provided any third party or entity, including the Union, with a copy of the Settlement Agreement. (Doc. 31, Gaal Aff., ¶19).

13

In response, plaintiff does not dispute that BCC did not provide a copy of the Settlement Agreement to a third party. (Doc. 43 at 5). However, he asserts that the *amount* of the settlement was disclosed to the Union via the Union Summary Report which listed the amount of the settlement. (Doc. 43 at 6, Exh. 4). Plaintiff points to a document entitled "Hearings of Charges by The Local Executive Board" dated August 31, 2009, which purports to indicate that a copy of the Union Summary Report was transmitted to the Union Hall. (Doc. 43, Exh. 5). Plaintiff contends this disclosure to the Union violates the terms of the confidentiality provision of the Settlement Agreement. In addition, plaintiff contends that there is no provision in the Settlement Agreement that did not permit the deduction of Union dues or vacation funds and that such dues and funds should have been deducted by BCC in accordance with the Union contract, contrary to Mr. Gaal's representation. (Doc. 43 at 6).

To establish his breach of contract claim, plaintiff must show: the existence of an agreement; that the nonbreaching party fulfilled its obligations under the agreement; breach without legal justification; and damages to the nonbreaching party. *Wochna v. Mancino*, No. 07CA0059, 2008 WL 623731, at *3 (Ohio App. 9th Dist. March 10, 2008) (citing *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 549, 713 N.E.2d 478, 480 (Ohio App. 9th Dist. 1998)). Plaintiff fails to present evidence creating a genuine issue of fact that BCC breached the confidentiality agreement and that any disclosure of the settlement amount was for non-legitimate business purposes.

It is undisputed that the Union Summary Report lists an amount of "total pay" equal to the amount of plaintiff's settlement with BCC. It is also clear that somehow the Union came into possession of this document. Yet, the evidence presented by BCC shows that the Union

14

Summary Report was provided by BCC only to the Benefit Funds, and not Local 502.  Plaintiff has not presented any evidence to the contrary.[6]

More importantly, the transmission of the Union Summary Report to the Benefit Funds was for the express business purpose of effecting the fringe benefit contribution that BCC was required to make under the terms of the Settlement Agreement.  The Settlement Agreement provides that BCC was required to pay Gilreath a stipulated settlement amount "less appropriate withholding for taxes" and "BCC shall contribute on Gilreath's behalf to the applicable fringe benefit funds the appropriate amounts based on the above payment to Gilreath." (Doc. 3, Exh. 1, ¶1).  In addition, the Settlement Agreement explicitly contains an exception for disclosures of the settlement amount by BCC "for legitimate business purposes." (Doc. 3, Exh. 1, ¶5).  The undisputed evidence before the Court confirms that the Union Summary Report was sent to the Benefit Funds by BCC in the "normal and required court of making Benefit Fund Contributions." (Doc. 31, Gaal Aff., ¶¶10, 18; Jordan Decl. ¶3).  BCC's letter to the Union did not disclose the actual amount of the settlement, but merely confirmed that federal and state taxes had been deducted from the amount paid to plaintiff as part of the settlement in order to facilitate the Benefit Funds' acceptance of the contributions made on plaintiff's behalf. (Doc. 31, Exh. G).

The undisputed evidence of record fails to show any breach of the confidentiality provision of the Settlement Agreement.  Even if BCC did disclose the settlement amount

---

[6]The document submitted by plaintiff entitled "Hearings of Charges by The Local Executive Board" suggests that the Union was made aware of the Union Summary Report by the Benefit Funds after the benefit funds contributions were made by BCC: "Baum . . . explained to . . . Gilreath that when benefits come in, and do not match what the computer says there should be on the report, it is rejected by the system *and the local is notified of the matter.*" (Doc. 43, Exh. 5) (emphasis added).  In any event, whether this is accurate or not does not affect the undersigned's resolution of the motion for partial summary judgment.

through the Union Summary Report, that disclosure was for the legitimate business purpose of effectuating the fringe benefit contribution on plaintiff's behalf and was permitted under the express terms of the Settlement Agreement.

To the extent plaintiff now argues that BCC should have also deducted vacation funds and union dues from the settlement amount, that claim has no bearing on whether BCC breached the confidentiality provision of the Settlement Agreement, nor is it an independent claim in this case. In any event, the Settlement Agreement terms did not authorized such deductions. Plaintiff's argument is not well-taken.

For these reasons, defendant BCC's motion for partial summary judgment on plaintiff's breach of confidentiality agreement (Count III) should be granted.

## V. Plaintiff's motion to amend and supplement the complaint as it relates to defendant BCC should be denied.

The granting or denial of a motion to amend pursuant to Fed. R. Civ. P. 15(a) is within the discretion of the trial court. Leave to amend a complaint should be liberally granted. *Foman v. Davis*, 371 U.S. 178 (1962). The Court should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, the repeated failure to cure deficiencies by amendments previously allowed, lack of notice to the opposing party, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994). Leave to amend should be denied when the amendment would be "futile." *Foman,* 371 U.S. at 182. The Court may deny the motion to amend where the complaint, as amended, could not withstand a motion to dismiss. *See Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005); *Matthews*

*v. Jones,* 35 F.3d 1046, 1050 (6th Cir. 1994); *Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376,

383 (6th Cir. 1993); *Neighborhood Development Corp. v. Advisory Council on Historic*

*Preservation, Department of Housing and Urban Development, City of Louisville,* 632 F.2d 21,

23 (6th Cir. 1980).

      Plaintiff's proposed amended complaint reiterates the causes of action of the original

complaint against BCC which are barred by the March 2009 Settlement Agreement.  Therefore,

allowing an amendment of the complaint to re-assert these claims would be futile and should

be denied.

      Plaintiff's proposed amended complaint also alleges a new claim against BCC for civil

conspiracy. (Doc. 27, proposed amended complaint, Count VII).  The amendment of the

complaint to add a conspiracy claim against BCC should be denied because the proposed

amended complaint fails to state a claim for relief for conspiracy.

      Ohio law defines a civil conspiracy as a "malicious combination of two or more persons

to injure another person or property, in a way not competent for one alone, resulting in actual

damages." *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863

(1995).  To state a claim for relief for a civil conspiracy, plaintiff must allege facts showing: (1)

a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4)

existence of an unlawful act independent from the actual conspiracy. *Id.*  "The malice involved

in the tort is 'that state of mind under which a person does a wrongful act purposely, without a

reasonable or lawful excuse, to the injury of another.'" *Williams v. Aetna Fin. Co.,* 83 Ohio

St.3d 464, 475, 700 N.E.2d 859, 868 (1998) (quoting *Pickle v. Swinehart,* 170 Ohio St. 441,

443, 166 N.E.2d 227, 229 (1960)).  A civil conspiracy requires an underlying unlawful act

independent of the conspiracy itself. *Williams*, 83 Ohio St.3d at 475, 700 N.E.2d at 868. To give rise to a cause of action for conspiracy the underlying unlawful action must constitute a tort. *See Great American Life Ins. Co. v. Thompson*, No. 1:04-cv-815, 2005 WL 1865389, at *11 (S.D. Ohio Aug. 4, 2005) (citations omitted). *See also Stiles v. Chrysler Motors Corp.*, 89 Ohio App.3d 256, 266, 624 N.E.2d 238, 244 (Ohio App. 6th Dist. 1993); *Crosby v. Beam*, 83 Ohio App.3d 501, 515, 615 N.E.2d 294, 303-304 (Ohio App. 6th Dist. 1992). "The conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery v. Rossford, Ohio Transp. Improvement Dist.,* 145 Ohio App.3d 155, 165, 762 N.E.2d 388, 395 (Ohio App. 6th Dist. 2001).

Here, plaintiff's proposed amended complaint alleges that defendants have "conspired to cause harm," "have caused harm," and "continue to cause harm," to plaintiff, and that plaintiff "has been damaged." (Doc. 27, proposed amended complaint at ¶¶181-184). Plaintiff's conclusory allegations of a conspiracy are insufficient to state a claim for relief.

To satisfy the first element of his conspiracy claim against BCC, that of a malicious combination, plaintiff need not show "an express agreement between defendants," but must allege facts showing "a common understanding or design, even if tacit, to commit an unlawful act." *Gosden*, 116 Ohio App.3d at 219, 687 N.E.2d 481, 496. Plaintiff must show that BCC, the alleged co-conspirator, shared in the general conspiratorial objective of another defendant. *Aetna Casualty and Surety Co. v. Leahey Const. Co.*, 219 F.3d 519, 538 (6th Cir. 2000) (construing Ohio law). The focus of a civil conspiracy is "on whether the defendant *agreed to join in* the wrongful conduct." *Id.* (quoting *Halberstam v. Welch,* 705 F.2d 472, 478 (D.C. Cir.

1983) (emphasis in the original).

Here, plaintiff fails to allege any facts whatsoever indicating the existence of an agreement between BCC or its employees and the other defendants to achieve any common objective, or facts suggesting a common understanding or design to perpetrate an unlawful act.[7] Plaintiff's vague and conclusory allegation that BCC was "associated with" allegedly unlawful conduct by Local 502 (Doc. 27, proposed amended complaint at ¶¶40-41) does not meet this standard. This is the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to suffice under *Iqbal*, 129 S.Ct. at 1949.[8] Plaintiff fails to allege any particular facts showing BCC or its employees directly interacted with any of the other defendants to achieve an unlawful objective. Nor has plaintiff alleged facts from which the Court could reasonably infer that BCC knowingly cooperated in or agreed to join in any alleged wrongful activity by the other defendants. As such, plaintiff's complaint, as amended, would fail to state a claim for

---

[7]In support of his claim that he meet the "malicious combination" element of a civil conspiracy claim, plaintiff fails to cite to any facts in his proposed amended complaint. Instead, he argues:

> [T]he record is clear as to the history between Gilreath and the NLRB. The malicious nature of BCC combined with Local 502. WMC forwarding information to Local 502. BCC giving information to Local 502 (unbeknown to Gilreath). Conversations to WMC through BCC and vice versa. Communications and negotiations between BCC and the NLRB outside the knowledge of Gilreath. Scant evidence provided by the parties prove malicious combination. Imagine what could be proven with full disclosure.

(Doc. 52 at 6).

The Court acknowledges that pro se pleadings are to be liberally construed and held to less stringent standards than those drafted by lawyers. However, the Court cannot make any sense of plaintiff's argument even if liberally construed.

[8]Plaintiff argues that his amended complaint is not subject to dismissal citing the standard in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (a pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). However, the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), effectively overruled the *Conley* "no set of facts" standard for evaluating whether a complaint can withstand a dismissal motion. *Twombly*, 550 U.S. at 561-63.

relief for a civil conspiracy under Ohio law. Accordingly, plaintiff's motion to amend the complaint to add a civil conspiracy claim against BCC should be denied.

Plaintiff also seeks to add a new claim for breach of fair representation against defendant BCC. (Doc. 27, proposed amended complaint, Count XIII). Plaintiff's breach of fair representation claim is premised on the conditions of the jobsite at BCC while he was employed by BCC. Therefore, this claim is barred by the Settlement Agreement previously entered into by plaintiff and BCC which released all claims plaintiff "has, had or may have" (Doc. 3, Exh. 1 at ¶3), including the breach of fair representation claim. Accordingly, the complaint as amended would not withstand a motion to dismiss this claim. Plaintiff's motion to amend the complaint to add a claim for breach of duty of fair representation should therefore be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Plaintiff's motion for leave to amend pleadings (Doc. 27) as it relates to defendant Bechtel Construction Company be **DENIED**.

2.  Defendant Bechtel Construction Company's motion for judgment on the pleadings and for partial summary judgment (Doc. 30) be **GRANTED**.

Date: 9/1/10

Timothy S. Hogan
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GREGORY GILREATH,                                    Case No. 1:09-cv-628
     Plaintiff,

                                                    Beckwith, J.

     vs                                               Hogan, M.J.

PLUMBERS, PIPEFITTERS, &
SERVICE TECHNICIANS LOCAL
502, et al.,
     Defendants

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☑ Agent<br>☐ Addressee |
| | B. Received by ( *Printed Name* ) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Gregory Gilreath<br>4442 Leston Avenue<br>Huber Heights Ohio 45424 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below:   ☐ No | |
| | 3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)*   ☐ Yes | |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0000 8389 8732 | |

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540

1:09cv628  (Doc.66)